IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DIANE E. MATHER, individually ) and as trustee of the ) HANA2008 LIVING TRUST and the ) VIOLET BLACK TRUST, ) ) Plaintiffs, ) ) vs. ) ) FIRST HAWAIIAN BANK, a Hawaii ) corporation, ) ) Defendant. ) _____ ) | CIVIL NO. 14-00091 SOM/RLP ORDER DENYING MOTION TO FILE AMENDED COMPLAINT; ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY |

**ORDER DENYING MOTION TO FILE AMENDED COMPLAINT;
ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

I.        INTRODUCTION.

Defendant First Hawaiian Bank lent Plaintiff Diane E. Mather $686,000 and extended to her a line of credit of up to $20,000. These loans were secured by mortgages on property located on Dole Street, in Honolulu, Hawaii. When Mather defaulted on these loans, First Hawaiian Bank filed a state-court foreclosure action. The state court granted summary judgment in favor of First Hawaiian Bank, issued a decree of foreclosure, and certified its ruling pursuant to Rule 54(b) of the Hawaii Rules of Civil Procedure. A court-appointed commissioner sold the Dole Street property at public auction, and the state court issued a deficiency judgment against Mather. Mather did not appeal any of the state court's rulings or judgments.

Mather now seeks leave to file a First Amended Complaint in which she attempts to undo and unwind the state-court orders and judgments. She also attempts to add claims against the attorneys representing First Hawaiian Bank for actions taken in the foreclosure proceedings. Because the proposed First Amended Complaint seeks to assert claims that are barred by the Rooker-Feldman doctrine and the principles of res judicata and collateral estoppel, and because the proposed First Amended Complaint clearly violates Rule 8(a) of the Federal Rules of Civil Procedure, Mather's motion seeking leave to file the proposed complaint is denied.

Because there is no operative complaint in this case, Mather may not seek discovery from Defendant(s) at this time. Her motion of July 15, 2014, which seeks to compel such discovery, is therefore denied.

## II.     STANDARD.

Rule 15(a) of the Federal Rules of Civil Procedure states that leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). In determining whether to allow amendment of a complaint, courts consider factors such as: whether the amendment will cause undue delay; whether the movant has demonstrated bad faith or a dilatory motive; whether the amendment will unduly prejudice the opposing party; whether amendment is futile; and whether the

movant has repeatedly failed to cure deficiencies. See Foman v. Davis, 371 U.S. 178, 182 (1962). The Ninth Circuit has noted that, of these factors, "prejudice to the opposing party carries the greatest weight." Sonoma County Ass'n of Retired Employees v. Sonoma County, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003)).

III.     **BACKGROUND FACTS.**

Proceeding pro se, Mather proposes a First Amended Complaint that is prolix. Its many irrelevant allegations cause it to cover 69 pages.

The factual background for this case is set forth in this court's order of June 24, 2014, and is incorporated here by reference. In summary, on or about September 25, 2008, First Hawaiian Bank lent Mather $686,000. On or about November 5, 2008, First Hawaiian Bank extended a line of credit to Mather of up to $20,000. Both loans were secured by mortgages on property located on Dole Street in Honolulu.

Instead of making payments in accordance with her obligations, Mather sought to escape those obligations by recording a Satisfaction of Mortgage and a Release and Discharge of Mortgage Lien in the State of Hawaii Bureau of Conveyances. This followed Mather's recording of a Notice of Dishonor and Non-Response in the Bureau of Conveyances in January 2012 that

claimed that, if First Hawaiian Bank failed to respond to the

Notice within three days, the $686,000 note (along with another

note for a separate $224,000 loan) would be null and void and

that First Hawaiian Bank would instead owe Mather $1,459,703.35.

First Hawaiian Bank filed a special proceeding in state court to

expunge those documents.  Mather eventually stipulated to the

expunging of the instruments she had recorded.  See Stipulated

Order to Expunge Various Instruments, S.P. No. 12-1-0240 KKS

(Haw. Cir. Ct. Aug. 30, 2012), ECF No. 9-9, PageID # 392.

     Mather says that, on or about November 15, 2012, she

sent an "Affidavit of Diane Mather Affidavit of Specific Negative

Treatment" to First Hawaiian Bank's attorney, David Y. Nakashima

of the Watanabe Ing, LLP, law firm.  See ECF No. 33-9, PageID

# 1111.  In this document, Mather "denies" that Nakashima is

First Hawaiian Bank's attorney, denies having obtained a loan

from First Hawaiian Bank, denies having mortgages on the Dole

Street property, and denies being in default.  Id., PageId #s

1111-12.  The document further claims that First Hawaiian Bank

owes Mather $3,948 for her fees and states that, if First

Hawaiian Bank does not respond to it within 10 days, those fees

will be due and payable to Mather.  Id., PageID # 1113.

     On or about December 6, 2012, First Hawaiian Bank filed

a complaint in state court to foreclose on the mortgages,

alleging that Mather was in default on her loans.  On August 23,

4

2013, the state court issued its Findings of Fact, Conclusions of Law and Order Granting Plaintiff's Motion for Summary Judgment as to All Claims and All Parties, Interlocutory Decree of Foreclosure and Order of Sale. See Civ. No. 12-1-3080 (Haw. Cir. Ct. Aug. 23, 2013), ECF No. 9-11, PageID # 400 ("Interlocutory Decree of Foreclosure"). The state court determined that Mather had defaulted on the loans and that First Hawaiian Bank was entitled to foreclose on its security interest. Id., PageID # 408. The state court ordered the Dole Street property sold via a public auction by a court-appointed commissioner. Id., PageID # 410. The state court further ruled that, pursuant to Rule 54(b) of the Hawaii Rules of Civil Procedure, the Interlocutory Decree of Foreclosure "shall be considered as a final order and judgment and there shall be no just reason for delay." Id., PageID # 413; see also Judgment re: Findings of Fact, Conclusions of Law and Order Granting Plaintiff's Motion for Summary Judgment as to All Claims and All Parties, Interlocutory Decree of Foreclosure and Order of Sale, Civ. No. 12-1-3080 (Haw. Cir. Ct. Aug. 23, 2013), ECF No. 9-12. Mather did not appeal the order or judgment, both of which were entered before she filed the Complaint in this action on February 25, 2014.

Mather filed a Chapter 11 bankruptcy petition. On December 2, 2013, the Bankruptcy Court dismissed that petition because Mather had not filed required documents. See Order

5

Dismissing Case with 180-Day Bar to Refiling for Failure to File Required Documents, ECF No. 9-13, PageID # 420.

The Dole Street property was sold at public auction to First Hawaiian Bank, and the state court confirmed the sale.  <u>See</u> Order Granting Plaintiff's Motion for Confirmation of Sale, Directing Distribution of Proceeds, for Deficiency Judgment, Writ of Possession and Disposal or Personal Property, Civ. No. 12-1-3080 (Haw. Cir. Ct. Mar. 21, 2014), ECF No. 21-3, and Judgment re: Order Granting Plaintiff's Motion for Confirmation of Sale, Directing Distribution of Proceeds, for Deficiency Judgment, Writ of Possession and Disposal or Personal Property, Civ. No. 12-1-3080 (Haw. Cir. Ct. Mar. 21, 2014), ECF No. 21-4.

A deficiency judgment in the amounts of $279,693.96 and $26,414.29 plus interest was entered against Mather on May 19, 2014.  ECF No. 33-15, PageID #s 1240-42.

Mather did not appeal any of the state court foreclosure proceeding orders and/or judgments.

## IV.      ANALYSIS.

### A.      The Proposed First Amended Complaint Violates Rule 8(a)(2) of the Federal Rules of Civil Procedure.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Mather's proposed First Amended Complaint violates Rule 8(a)(2), as it is neither a short nor a plain statement of her claims.

Instead, it is 69 pages of irrelevant statements and improper challenges to the state-court foreclosure proceeding.  For that reason alone, the court denies Mather's request for leave to file the proposed complaint.  See <u>McHenry v. Renne</u>, 84 F.3d 1172, 1178-80 (9th Cir. 1996) (affirming dismissal of complaint that violated Rule 8).

In <u>McHenry</u>, the Ninth Circuit discussed several reasons for dismissing complaints that violate Rule 8:

> If the pleading contains prolix evidentiary averments, largely irrelevant or of slight relevance, rather than clear and concise averments stating which defendants are liable to plaintiffs for which wrongs, based on the evidence, then this purpose is defeated. Only by months or years of discovery and motions can each defendant find out what he is being sued for.  The expense and burden of such litigation promotes settlements based on the anticipated litigation expense rather than protecting immunity from suit.

84 F.3d at 1178.  Of additional concern is the effect that a prolix complaint has on the court and the parties:

> Prolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges.  As a practical matter, the judge and opposing counsel, in order to perform their responsibilities, cannot use a complaint such as the one plaintiffs filed, and must prepare outlines to determine who is being sued for what.  Defendants are then put at risk that their outline differs from the judge's, that plaintiffs will surprise them with something new at trial which they reasonably did not understand to be in the case at all, and that res judicata effects of settlement or judgment will be different from what they

reasonably expected. "[T]he rights of the
defendants to be free from costly and
harassing litigation must be considered."

Id. at 1179-80 (quoting Von Poppenheim v. Portland Boxing &

Wrestling Comm'n, 442 F.3d 1047, 1054 (9th Cir. 1971)). The

Ninth Circuit further explained:

> The judge wastes half a day in chambers
> preparing the "short and plain statement"
> which Rule 8 obligated plaintiffs to submit.
> He then must manage the litigation without
> knowing what claims are made against whom.
> This leads to discovery disputes and lengthy
> trials, prejudicing litigants in other
> case[s] who follow the rules, as well as
> defendants in the case in which the prolix
> pleading is filed.

Id. at 1180.

All of the Ninth Circuit's concerns in McHenry are

applicable to the proposed First Amended Complaint Mather seeks

to file. This court has wasted valuable time attempting to

understand the claims in this case. Like the pleading in

McHenry, Mather's proposed complaint "is argumentative, prolix,

replete with redundancy, and largely irrelevant." Id. at 1177.

The court's time could have easily been spent on other cases.

Forcing First Hawaiian Bank and its attorneys to answer and

litigate the proposed complaint would be unduly burdensome under

the circumstances, especially because Mather cannot viably assert

many of the claims she seeks to make.

8

**B. The Proposed Amended Complaint Would Be Futile.**

   **1. Mather Cannot Relitigate Claims As If They Have Not Been Dismissed.**

Even if the court examines the claims Mather attempts to assert, an amendment is futile. As the court ruled in its order of June 24, 2014, Mather's claims for damages under the Truth in Lending Act ("TILA") are time-barred. Mather may not now simply ignore this court's ruling and assert claims for damages under TILA. <u>See</u> Proposed First Amended Complaint, Tenth Cause of Action. As the Ninth Circuit noted in <u>Rebel Oil Co. v. Atlantic Richfield Co.</u>, 146 F.3d 1088, 1093 (9th Cir. 1998), the "law of the case" doctrine generally precludes a court from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.

   **2. Mather May Not Appeal the Orders and Judgment of the State Court to This Court, or Relitigate Those Matters.**

In the order dismissing the original Complaint, the court expressed concern that, in attempting to amend her Complaint, Mather not improperly attempt to appeal the state-court foreclosure orders and judgments to this court in violation of the <u>Rooker-Feldman</u> doctrine. <u>See</u> <u>D.C. Court of Appeals v. Feldman</u>, 460 U.S. 462, 482-86 (1983); <u>Rooker v. Fid. Trust Co.</u>, 263 U.S. 413, 415-16 (1923). The court was also concerned about the effect of issue and/or claim preclusion. <u>See</u> <u>Santos v. State of Hawaii</u>, 64 Haw. 648, 651-52, 646 P.2d 962, 965 (1982) (noting

9

that issue and claim preclusion prevent parties from relitigating claims or issues that have already been decided by a competent tribunal). The court's concerns were well-founded.

### a. **Rooker-Feldman.**

Under the Rooker-Feldman doctrine, federal courts are divested of jurisdiction to conduct a direct review of state court judgments even when a federal question is presented. See Bennett v. Yoshina, 140 F.3d 1218, 1223 (9th Cir. 1998. Accord Mackay v. Pfeil, 827 F.2d 540, 543 (9th Cir. 1987) ("Federal district courts, as courts of original jurisdiction, may not serve as appellate tribunals to review errors allegedly committed by state courts"). The Rooker-Feldman doctrine is confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Jurisdiction is lacking even if a state court's decision is challenged as unconstitutional. Feldman, 460 U.S. at 486; Branson v. Nott, 62 F.3d 287, 291 (9th Cir.1995) ("As courts of original jurisdiction, federal district courts have no authority to review the final determinations of a state court in judicial proceedings. This is true even when the challenge to a state court decision involves federal constitutional issues")

10

(citations omitted).  Litigants who believe that a state judicial proceeding has violated their constitutional rights must appeal that decision through their state courts and then seek review in the Supreme Court.  See Feldman, 460 U.S. 482-483; Bennett, 140 F.3d at 1223 (noting that the rationale behind the Rooker-Feldman doctrine "is that the only federal court with the power to hear appeals from state courts is the United States Supreme Court").

The Rooker-Feldman doctrine does not apply to a "general constitutional challenge"--one that does not require review of a final state court decision in a particular case.  See Doe & Assocs. Law Offices v. Napolitano, 252 F.3d 1026, 1029 (9th Cir. 2001).  The distinction between a permissible general constitutional challenge and an impermissible appeal of a state court determination may be subtle and difficult to make.  If the federal constitutional claims presented to the district court are "inextricably intertwined" with the state court's judgment, then a plaintiff is essentially asking this court to review the state court's decision, which this court may not do.  Id.

### b.    Issue and Claim Preclusion.

The preclusive effect in this court of a Hawaii state court decision is determined by Hawaii law.  Pedrina v. Chun, 97 F.3d 1296, 1301 (9th Cir. 1996) ("In determining whether a prior state court action bars a subsequent federal action, the federal court must look to the res judicata principles of the state court

in which the judgment was rendered"); <u>In re Russell</u>, 76 F.3d 242, 244 (9th Cir. 1995) ("Because the underlying judgment was rendered in state court, we must apply California's res judicata and collateral estoppel principles").

Under Hawaii law, the doctrine of res judicata applies when: 1) the claim asserted in the action in question was or could have been asserted in the prior action, 2) the parties in the present action are identical to, or in privity with, the parties in the prior action, and 3) a final judgment on the merits was rendered in the prior action. <u>Pedrina</u>, 97 F.3d at 1301 (citing <u>Santos v. State of Hawaii</u>, 64 Haw. 648, 646 P.2d 962, 966 (1982)); <u>Morneau v. Stark Enters., Ltd.</u>, 56 Haw. 420, 422-23, 539 P.2d 472, 474-75 (1975) (the "judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter, and precludes the relitigation, not only of the issues which were actually litigated in the first action, but also of all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided").

Under Hawaii law, the doctrine of collateral estoppel bars relitigation of an issue when: (1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final judgment on the merits;

(3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication.  Dorrance v. Lee, 90 Haw. 143, 149, 976 P.2d 904, 910 (1999).

Res judicata and collateral estoppel prevent a multiplicity of suits, avert inconsistent results, and provide a limit to litigation by promoting finality and judicial economy. Dorrance, 90 Haw. at 148-49, 976 P.2d at 909-10.  Both doctrines serve to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudications. They therefore further the interests of litigants, the judicial system, and society by bringing an end to litigation when matters have already been tried and decided on the merits.  See Kauhane v. Acutron Co., 71 Haw. 458, 463, 795 P.2d 276, 278-79 (1990). The doctrines permit every litigant to have an opportunity to try its case on the merits, but they limit the litigant to one such opportunity.  Id.  Accord Pedrina v. Chun, 906 F. Supp. 1377, 1398 (D. Haw. 1995), aff'd, 97 F.3d 1296 (9th Cir. 1996) (stating that the res judicata doctrine protects the integrity of the courts and promotes reliance on judicial pronouncements by requiring that the decisions and findings of the courts be accepted as undeniable legal truths).

###### 3. Many of the Claims in the Proposed First Amended Complaint Ask This Court to Sit as An Appellate Court Over the State-Court Proceedings and/or Raise Issues that Were or Could Have Been Decided in Those Proceedings.

As discussed above, Mather may not ask this court to review the orders and judgments in the state-court foreclosure proceedings. Nor may she now assert claims that either were or should have been asserted and decided in those proceedings.

Thus, Mather may not challenge in this case First Hawaiian Bank's standing to foreclose on her loans in the state-court proceedings (First Cause of action). Any such assertion should have been raised in the state court and appealed through the state-court appellate process. The state court necessarily determined that First Hawaiian Bank had such standing when it enforced the loan documents. The Rooker-Feldman doctrine prevents this court from sitting as an appellate court over that decision.

Mather is also barred from asserting in this court her claims for fraudulent concealment (Second Cause of Action), for a violation of section 480-2 of Hawaii Revised Statutes (Eleventh Cause of Action), and for an "equitable accounting" (Thirteenth Cause of Action). First, Mather's claims that First Hawaiian Bank fraudulently concealed that it was not the owner and holder of her notes and mortgages and therefore had no legal right to enforce those documents is barred by the state court's

14

determination that First Hawaiian Bank was indeed the owner and holder of her mortgages. Mather may not appeal that determination to this court. Any such challenge should have been made in the state court proceedings and/or appealed through the state-court appellate system.

Second, Mather's claim that First Hawaiian Bank committed fraud in the foreclosure proceedings by representing that it owned the notes and mortgages (Third Cause of Action) is a claim that should have been raised in state-court proceedings. This court cannot sit as an appellate court over that claim.

Mather now seeks to assert that First Hawaiian Bank slandered her title to the Dole Street property (Sixth Cause of action), that she is entitled to quiet title with respect to the Dole Street property (Seventh Cause of Action), and that she is entitled to a declaration that she owns the Dole Street property because the notes and mortgages at issue were invalid (Eighth Cause of Action). Each of those claims would have this court reexamine whether First Hawaiian Bank was entitled to foreclose on the notes and mortgage. This court cannot conduct such a reexamination.

Mather is collaterally estopped from arguing that, based on misrepresentations First Hawaiian Bank's attorneys allegedly made to the state court in the foreclosure proceedings about First Hawaiian Bank's ownership of her loans, the attorneys

violated the Fair Debt Collection Practices Act (part of the Fourth Cause of Action) or that the attorneys and First Hawaiian Bank violated the Racketeer Influenced and Corrupt Organizations Act (Fifth Cause of Action). In foreclosing on the mortgages securing her loans, the state court necessarily determined that First Hawaiian Bank owned the loans. Mather may not now attempt to assert claims based on her contention that First Hawaiian Bank's attorneys submitted allegedly false statements to the court indicating that First Hawaiian Bank owned her loans or that the attorneys and the bank had no right to foreclose on the mortgages securing the loans.

In the Twelfth Cause of Action, Mather complains of First Hawaiian Bank's attempts to collect on its judgements by obtaining garnishment orders in state court. Again, Mather must appeal those orders through the state's appellate system, even if she believes that her federal constitutional rights have been violated by the state court's issuance of the orders.

### 4. Mather Cannot Assert Her Proposed Fair Debt Collection Practices Act Claim.

The Fourth Cause of Action asserts violations of the Fair Debt Collection Practices Act by First Hawaiian Bank, the entity that the state court determined owned her note and mortgage, as well as its attorneys, the law firm of Watanabe Ing.

The FDCPA provides damages to "any person" who suffers "actual damage" at the hands of a "debt collector":

> Except as otherwise provided by this section,
> any debt collector who fails to comply with
> any provision of this subchapter with respect
> to any person is liable to such person in an
> amount equal to the sum of--
>
> (1) any actual damage sustained by such
> person as a result of such failure; [or]
>
> (2)(A) in the case of any action by an
> individual, such additional damages as the
> court may allow, but not exceeding $1,000[.]

15 U.S.C. § 1692k(a).

> The FDCPA defines "debt collector" as:
>
> any person who uses any instrumentality of
> interstate commerce or the mails in any
> business the principal purpose of which is
> the collection of debts, or who regularly
> collects or attempts to collect, directly or
> indirectly, debts owed or due or asserted to
> be owed or due another.

See 15 U.S.C.A. § 1692a(6).

A "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (ii) concerns a debt which was originated with such person." 15 U.S.C. § 1692a(6)(F)(ii); see also De Dios v. Int'l Realty & Invs., 641 F.3d 1071, 1074 (9th Cir. 2011) (noting that the FDCPA excludes from the definition of "debt collector" any "person who originated the debt, such as a creditor to whom the debt was originally owed"); Rowe v. Educ. Credit Mgm't Corp., 559 F.3d 1028, 1031 (9th Cir. 2009) (stating that "a 'creditor' is not a 'debt collector' under the FDCPA"); Jonak v. John Hancock Mut.

17

Life Ins. Co., 629 F. Supp. 90, 94 (D. Neb. 1985) (noting that the definition of "debt collector" "excludes both creditors seeking to collect their own debts and the officers and employees of creditors collecting debts for the creditors"). Because First Hawaiian Bank was the original lender and owner of Mather's loans during the foreclosure proceedings, it cannot have been a debt collector for purposes of the Fair Debt Collection Practices Act. Accordingly, any claim under that act against First Hawaiian Bank would be futile.

Mather may be asserting that Watanabe Ing violated the Fair Debt Collection Practice Act when it did not cease collection efforts and verify the debt after she sent it a written communication to that effect. In Paragraph 90, she makes such an assertion with respect to First Hawaiian Bank. But the proposed First Amended Complaint lacks facts explaining such a claim. At best, Mather references the "Affidavit of Specific Negative Treatment" that she sent to Watanabe Ing in November 2012. But it is not clear whether this document qualifies as a request that Watanabe Ing verify the debt. The court does not allow this unclear claim to proceed as alleged.

### 5. Mather Cannot Assert Her Proposed Real Estate Settlement Procedures Act Claim.

Mather's proposed Ninth Cause of Action asserts a violation of the Real Estate Settlement Procedures Act ("RESPA"). To the extent Mather claims that First Hawaiian Bank violated 12

U.S.C. § 2605 by failing to disclose facts when the bank made loans to her in 2008, that claim is time-barred.  12 U.S.C. § 2614.  To the extent the RESPA claim is based on an alleged failure to respond to a qualified written request, the claim is confusing given the prolixity of the proposed complaint.  It appears that, in October 2012, Mather sent First Hawaiian Bank a voluminous document, ECF No. 33-6, in which she essentially asked for discovery (PageID #s 955-59), offered a $661,000 note in satisfaction of her loan obligations (PageID #s 962-69), sent a mortgage satisfaction agreement in which she stated that First Hawaiian Bank's failure to accept the agreement within three days would be deemed to be acceptance of it and that any breach of it would entitle her to liquidated damages of three times the value of the proposed note (PageID #s 970-78), and claimed that First Hawaiian Bank owed her $1,983,000 in liquidated damages (PageID #s 981).  Because the factual basis of the RESPA claim asserted in the proposed First Amended Complaint is unclear, the court will not allow that claim to proceed as alleged.  Mather may well be able to plead such a claim, but she does not currently state a claim on which relief may be granted.

### C.  Mather is Granted Leave to File Another Motion Seeking Leave to File a First Amended Complaint.

When this court dismisses a complaint, it normally gives a plaintiff a chance to file an amended complaint.  Given Mather's history, the court is concerned that she may be abusing

the court process.  Instead of filing a new version of a First Amended Complaint, Mather may file another motion seeking leave to file a new proposed First Amended Complaint.  She must attach to the motion her new proposed First Amended Complaint and must file the motion no later than September 12, 2014.  If Mather fails to timely file that motion, the Clerk of Court is directed to automatically close this case.  First Hawaiian Bank and/or Watanabe Ing shall have no duty to respond to the motion or to any proposed complaint or to answer any discovery request until this court orders a response.  When the court receives the new motion with the new proposed complaint, the court will schedule and hold a telephonic status conference to discuss how to proceed.

Mather must follow court rules with respect to any new proposed complaint.  Violations of these rules and conditions may result in the denial of any motion seeking leave to file a new First Amended Complaint.

1.  The proposed First Amended Complaint must be complete in itself; it may not incorporate by reference anything previously filed with this court.

2.  The proposed First Amended Complaint may not seek to relitigate matters the merits of which have been ruled on by this court.  Those matters are law of the case.

20

3.    The proposed First Amended Complaint may not
assert claims based on First Hawaiian Bank's allegedly improper
foreclosure on the mortgages on the Dole Street property.  In
other words, if a claim is based on a fact or an issue already
decided in the state-court foreclosure proceedings, Mather may
not seek to relitigate those facts or issues, and may not claim
that the foreclosure proceedings were wrong or improper.  Any
such attempt is barred by the <u>Rooker-Feldman</u> doctrine and/or the
doctrines of res judicata and collateral estoppel.

4.    The proposed First Amended Complaint must comply
with Rule 8(a)(2) of the Federal Rules of Civil Procedure.  That
is, it should be <u>short</u> and should state in simple language what
First Hawaiian Bank and or Watanabe Ing or any other Defendant
allegedly did and what statute, law, or duty was supposedly
breached.  Mather should focus less on stating legal conclusions
and more on alleging facts as to what each Defendant allegedly
did and why it is liable for its specific actions.  To that end,
immediately after the heading identifying each cause of action by
number and subject matter, the proposed First Amended Complaint
<u>must</u> contain a brief factual summary (50 words or less) of the
facts that the specific cause of action is based on.  (Example:
First Cause of Action.  Violation of X statute.  "X statute
required Defendant 1 to provide Plaintiff with information
requested by Plaintiff within 2 weeks, but, despite the passage

of a year since Plaintiff's request, Defendant 1 has not provided the information.")

5. If Mather attaches material to the proposed First Amended Complaint, she must ensure that the attachments are relevant to her claims. In other words, if Mather is claiming that she sent First Hawaiian Bank a "qualified written request" for purposes of RESPA and she attaches documentation supporting that claim, the documents should be limited to the "qualified written request." Alternatively, if Mather refers to a lengthy document, she should describe which part of the document is relevant to her claim, not just attach the lengthy document and force the court and Defendants to guess which part she is referring to.

6. The court suggests that Mather refrain from "cutting and pasting" from any previously filed document, as those documents have not properly alleged claims.

7. If Mather asserts fraud-based claims, she is reminded of the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. That is, fraud must be pled with particularity.

8. Mather is further reminded that, by presenting a proposed First Amended Complaint to the court, she is certifying under Rule 11(b) of the Federal Rules of Civil Procedure that it is not being presented for an improper purpose and that the

claims therein are not frivolous and will be supported by facts. If Mather violates Rule 11 or otherwise proceeds in bad faith, she may be subject to sanctions, such as a requirement that she pay a fine.

**V. CONCLUSION.**

The court denies Mather's motion of July 11, 2014, seeking leave to file the proposed First Amended Complaint attached thereto. The court denies the motion without a hearing pursuant to Local Rule 7.2(d). The court also denies Mather's motion of July 15, 2014, seeking to compel discovery, as there is no operative complaint in this case at this time. Mather may file a motion seeking leave to file a new First Amended Complaint in compliance with this order no later than September 12, 2014.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 22, 2014.



 /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

<u>Mather, et al. v. First Hawaiian Bank</u>, Civil No. 14-00091 SOM/RLP; ORDER DENYING MOTION TO FILE AMENDED COMPLAINT; ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY